**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| WAYNE RESPER, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-12-691 |
| DEREK A. BAER, | * | |
| Defendant | * | |
| | *** | |

**MEMORANDUM OPINION**

Plaintiff Wayne Resper ("Resper") filed the above-captioned Complaint pursuant to 42 U.S.C. §1983. Defendant Derek A. Baer by his attorney has filed a Motion to Dismiss, or in the Alternative for Summary Judgment. ECF No. 9. Plaintiff has responded. ECF No. 17. After review of the pleadings, and applicable law, the court determines that a hearing is unwarranted. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the Motion to Dismiss, construed as a Motion for Summary Judgment, will be GRANTED.

**Background**

Resper, an inmate confined at the North Branch Correctional Institution ("NBCI"), alleges that on July 8, 2009, as he returned from court, his legal papers and calendar were unlawfully seized and destroyed by Defendant Baer. Plaintiff states that Baer took these actions in retaliation for Plaintiff having filed an excessive force claim against him. ECF No. 1.

Plaintiff filed an administrative remedy regarding the destroyed property and appealed to the Office of Administrative Hearings. *Id.*, Ex. 2. The ALJ summarized the case as follows:

> The Grievant testified that when he returned form court on July 8, 2009, he had a large folded calendar with some paperwork inside. The calendar had written dates of

all of the Grievant's court activity from 2002 until the present. It was not a poster. According to the Grievant, the calendar and paperwork had already been approved by other correctional officers on several occasions. The Grievant asked CO Weisenmiller to inquire as to why Officer Baer confiscated the items, and CO Baer told CO Weisenmiller that he calendar was a poster, it was contraband and, once informed of this, the Grievant told him to throw it away. The Grievant denied that any such conversation occurred. He did insist that CO Baer's actions were in retaliation for a grievance that the Grievant field against him in March 2009.

CO Baer testified that the Grievant's calendar was "poster-like" and could be hung on the wall. He explained that for security reasons, such an item is non-allowable. CO Baer noted that the Grievant even stated that the calendar had been 'pieced together' by him. Thus, according to CO Baer, it was also considered to be contraband because it has been altered from its original state.

Division of Correction Direction ("DCD") 220-004 sets forth the DOC's policies regarding the confiscation of contraband. DCD 220-04(V) (c)(3) defines contraband to include "[any property that has been altered from the manufacturer's original shape, conditions, or purpose. DCD 220-004(VI)(c)(4) defines "nuisance contraband:"

> Nuisance contraband is any item other than contraband per se, which has never been authorized, or which previously has been authorized for possession by an inmate, but whose possession is prohibited when it presents a threat to security or its condition or excessive quantities of it present a health, fire, or housekeeping hazard. Examples of nuisance contraband include:
> \*\*\*
> b. altered personal property…

As Officer Baer testified, property altered form its original state is contraband. However, I found the Grievant's testimony to be credible that the confiscated calendar was a folding style calendar with dates of his court activity since 2002. Although he stated that it was "pieced together" by him, there was no dispute that it was a calendar with legal paperwork inside. A calendar with written dates or with pages inserted therein for the purpose of keeping track of court dates and obligations simply constitutes the use of that calendar for its intended purpose. Therefore, it would not be considered as "altered" and could not fall within the confines of the definition of "contraband" that he plain language of DCD 220-0004 appears to envision. CO Baer did not explain how the calendar could threaten security or present a health, fire or housekeeping hazard. It was merely a record of dates. Similarly the DOC did not present any specific evidence as to why the Grievant's use of this particular calendar constituted an "alteration" of personal property, other than to refer to the Grievant's use of the term "pieced together." There was no dispute that the calendar had legal paperwork inside, and legal paperwork is clearly allowable property that should not have been confiscated. DCD 220-004(VI)(A)(4).

> CO Baer also testified that the calendar was not allowable property because it was "poster-like." He insisted that it was something that could be hung on a wall and was therefore a security issue. The DOC did not refer to any policy or regulation that proscribes any item that can hang on a wall, or any other policy that placed a hanging calendar into such a category of contraband.
>
> DCD 220-004(VI)(D) sets forth a detailed procedure with which the DOC must comply for the confiscation of contraband. The procedure involves the presentation of certain forms to the inmate. In most situations, the inmate must also be given the opportunity to determine how the property will be disposed of or where it will be shipped. CO Baer insisted that he followed the procedures regarding the confiscation of contraband, and maintained the Grievant told him to throw the calendar away. There is no evidence in the record that would indicate that the DOC followed the applicable procedures. I am convinced by the absence of any such evidence, together with the Grievant's credible testimony, that the proper procedures were not followed that the Grievant never told CO Baer to throw the calendar and his legal papers away.

ECF. No. 1, Ex. 2.

The ALJ found that Plaintiff was not entitled to damages because he could not specify what legal paperwork was lost and his request for compensatory damages exceed the market price of similar calendars. *Id.*

Defendant Baer avers that on July 8, 2009, he confiscated Plaintiff's calendar. He avers that through his training and experience he perceived and believed that the materials were non-allowable property. He further avers that he explained to Plaintiff why the property was being destroyed and Plaintiff told him to throw the property away. ECF No. 9, Ex. 2.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a

sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A.   Access to courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 354.

In his opposition to Defendant's dispositive motion, Plaintiff indicates that the materials destroyed "related to a ventilation and property matter." ECF No. 17. He states that the materials were "essential to Plaintiff being able to file an appeal to an adverse ruling or file a claim under the Maryland Tort Claims Act." *Id*. Plaintiff states that the legal papers "represented case numbers 125591 and 121517 in the Circuit Court for Anne Arundel County" and their destruction foreclosed his ability to appeal and/or advance his pleadings. He does not explain with any specificity what materials were lost and how their destruction prohibited him from pursuing his claim. Plaintiff must show actual prejudice to his ability to proceed with his legal claim. *See Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1998); *Bernadou v. Purnell*, 836 F. Supp. 319, 325 (D. Md. 1994). Plaintiff has offered nothing more than a bald allegation that the destruction of the unspecified materials made it impossible to pursue his claims regarding conditions of confinement. Accordingly, his claim fails.

B.   Retaliation

Plaintiff claims that Defendant retaliated against Plaintiff by confiscating the materials due to Plaintiff having filed an excessive force case against him. Plaintiff states there is "no other rational basis for Defendant's malicious misconduct." *Id*. In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's

> rights, there is no need for the protection provided by a cause of action
> for retaliation. Thus, a showing of adversity is essential to any retaliation
> claim.

*ACL U of Maryland, Inc. v. Wicomico County*, Md.  999 F.2d 780, 785 (4th Cir. 1993)

As noted supra, Plaintiff has failed to show any adversity as a result of the alleged retaliatory conduct, i.e. he has failed to sufficiently demonstrate any impairment of his right to access the courts.  A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287, (1977);  *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir.1999) (*en banc*). A retaliation claim has three elements: 1) the prisoner engaged in protected conduct; 2) an adverse action was taken against the prisoner that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements, i.e., the prisoner's protected conduct motivated at least in part the adverse action. *See Thaddeus-X.*, 175 F.3d at 394. Plaintiff offers nothing in support of his retaliation claim other than self-serving conclusory averments.  There is nothing in the record to suggest that the conduct of Defendant was causally connected to Plaintiff having filed a claim against Defendant.  "In the prison context, we treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3de 1310, 1317 (4th Cir. 1996).   Plaintiff cannot prevail on this claim.

For the aforementioned reasons, the Defendant's Motion, construed as a motion for summary judgment, shall be granted. A separate Order follows.

February 19, 2013

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE